**UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
PADUCAH DIVISION
CASE NO. 5:11-CV-43**

UNITED STEEL, PAPER AND
FORESTRY, et al.                                                                                       PLAINTIFFS

v.

SEKISUI SPECIALTY CHEMICALS
AMERICA, LLC                                                                                             DEFENDANT

## MEMORANDUM OPINION

This matter is before the Court on the parties' cross-motions for summary judgment (DNs 21, 27). Responses and Replies were filed (DNs 28, 32, 34, 35), and this matter is now ripe for decision. For the following reasons, Plaintiffs' motion for summary judgment (DN 27) is DENIED and Defendant's motion for summary judgment (DN 21) is DENIED.

## BACKGROUND

Defendant Sekisui Specialty Chemicals America, LLC ("Sekisui") owns a manufacturing plant in Calvert City, Kentucky. Until June 2009, the plant was owned by Celanese Corporation ("Celanese"). Effective July 1, 2009, Sekisui purchased the Calvert City plant from Celanese. Prior to the sale, the bargaining unit employees at the plant were represented under a collective bargaining agreement ("CBA") in force between Celanese and the United Steelworkers Local 737 (the "Union").[1] Under the terms of the sale, Sekisui agreed to recognize the Union and assume the CBA in place between the Union and Celanese. This CBA contained a medical benefits plan that applied to all full-time bargaining unit employees. The CBA stated, in relevant part: "All employees covered by this Agreement will be eligible to participate in the plans negotiated between the parties to include the following: Medical Plan (including prescriptions),

---
[1] That CBA became effective December of 2008.

1

Dental Plan, Life Insurance, Accidental Death and Dismemberment, Accident and Sickness, Group Insurance Programs and Long Term Disability on the first day of their employment." CBA, DN 1-1 at p. 23.

In preparation for the sale, Sekisui contacted its outside benefits coordinator, Mercer Company ("Mercer"), regarding going into the health benefits market to locate a health benefit package that matched as closely as possible the current schedule of health benefits contained in the agreement between Celanese and the Union (the "Celanese Plan"). The Celanese Plan was a self-funded plan administered by a third-party administrator ("TPA"). Due to the small size of the plant workforce –45 employees–no company would submit a bid to administer a self-insured plan that mirrored the Celanese Plan. Mercer ultimately found two insurers who consented to bid for coverage; however, the plans were not self-funded and the terms of the health benefit proposals were not an exact match to the coverage under the Celanese Plan. Sekisui chose Blue Cross Blue Shield ("BCBS") as its provider for the bargaining unit employees. The BCBS Plan provided greater coverage in some areas, but provided less coverage in some areas.

Before implementing the BCBS Plan, Sekisui met with bargaining unit employees to inform them of the new plan provisions and the plan for implementation. Taking the position that Sekisui could not unilaterally change the terms of the health plan without negotiating with the Union, the Union filed a grievance. Although attempts to resolve this matter under the grievance procedure were unsuccessful, Sekisui committed to reimburse any employee who suffered increased medical payments due to *some* of the differences in coverage, retroactive to the date of acquisition. Ultimately, the Union filed a demand for final and binding arbitration pursuant to the CBA.

The arbitrator framed the issue as follows: "Whether the Company's new health insurance plan's provisions for the bargaining unit, which it implemented on or about July 1, 2009, violated the terms and conditions of the December 2008 agreement between the parties. If so, what shall the remedy be?" DN 1-2, Opinion and Award of the Arbitrator, at p. 3. Without considering the relative advantages and disadvantages of the new plan, the arbitrator determined only that Sekisui was obligated to bargain with the Union prior to any change in the health care plan that covered the bargaining unit employees. Therefore, the arbitrator concluded that Sekisui violated the terms of the CBA when it unilaterally implemented the BCBS Plan. As a remedy, the arbitrator provided the following:

> As a remedy for the violation, the Company is ordered to restore the bargaining unit health care plan to the *status quo ante* which prevailed on May 28, 2009 when the Company agreed in writing to be bound by the terms and conditions of the collective bargaining agreement. *Status quo ante* applies not only to the terms and conditions of the health plan, but also to any shortfalls in coverage to individuals that might have occurred under the terms of the new plan, but which would have been covered under the health plan in effect at the time the Company agreed to be bound by the collective bargaining agreement. The arbitrator shall retain jurisdiction for a period of ninety (90) days from the date of this award to resolve any questions or issues raised by this finding and award.

DN 1-2 at p. 9. The arbitrator retained jurisdiction through December 26, 2010.

On October 4, 2010, Joel Anderson, Sekisui's Director of Human Resources, wrote to Joe Villines, the Union's staff representative, and said:

> In compliance with the award, the Company will make employees whole for any out-of-pocket costs due to differences in coverage between the Celanese plan and the current plan. Before today, the Company had already committed to do this for all differences except those resulting from certain chiropractic treatment (visits exceeding 30 but less than 61 per year) and retail purchases of 60-90 day supplies of prescription drugs.
>
> Employees who have experienced such out-of-pocket cost differences should provide satisfactory documentation to the Human Resources office . . .

The letter also stated that "[t]he Company is willing to meet and discuss any aspect of this. Please let me know if you wish to do so." Also in October 2010, Local Union President Brandon Duncan spoke with Sekisui HR Business Partner Ila Frazier about the reimbursement process and expressed concerns over employees having the show specific medical information to get reimbursements approved. Ms. Frazier responded that all she required for reimbursement was a receipt. Sekisui has since processed claims in this fashion. In addition, Sekisui has "grossed-up" each payment to offset the potential tax consequences for the employee.

Despite Sekisui's steps to reimburse employees for medical expenses which would have been covered under the Celanese Plan, the Union maintained that Sekisui had not complied with the arbitrator's award. The Union did not file a grievance, request a meeting, or invoke the arbitrator's continuing jurisdiction regarding Sekisui's compliance with the arbitrator award. Instead, the Union filed a complaint in United States District Court to enforce the arbitration award (DN 1) on March 25, 2011. In the complaint, the Union alleges that Sekisui has not restored the health care plan that was in effect on May 28, 2009 and has not negotiated a new plan with the Union. DN 1 at ¶18. The Union requested that this Court (1) enforce the award of the arbitrator, (2) order Sekisui to reinstate the prior health insurance plan until it negotiates a new plan with the Union, (3) award the reasonable costs and attorneys' fees incurred in this litigation, and (4) issue other such relief as may be just and proper. DN 1. As of January 1, 2012, bargaining unit employees are covered by the Steelworkers Health and Welfare Fund. The Union now states that it is no longer asking the Court to order the Company to restore the old health plan. Instead, the Union is only seeking retroactive relief for the Company's failure to comply with the arbitrator's award. DN 34 at p. 2.

**SUMMARY JUDGMENT STANDARD**

Summary judgment is appropriate where "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). In determining whether summary judgment is appropriate, a court must resolve all ambiguities and draw all reasonable inferences against the moving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

"[N]ot every issue of fact or conflicting inference presents a genuine issue of material fact." *Street v. J. C. Bradford & Co.*, 886 F.2d 1472, 1477 (6th Cir. 1989). The test is whether the party bearing the burden of proof has presented a jury question as to each element in the case. *Hartsel v. Keys*, 87 F.3d 795, 799 (6th Cir. 1996). The plaintiff must present more than a mere scintilla of evidence in support of his position; the plaintiff must present evidence on which the trier of fact could reasonably find for the plaintiff. *See id.* (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986)). Mere speculation will not suffice to defeat a motion for summary judgment: "the mere existence of a colorable factual dispute will not defeat a properly supported motion for summary judgment. A genuine dispute between the parties on an issue of material fact must exist to render summary judgment inappropriate." *Monette v. Elec. Data Sys. Corp.*, 90 F.3d 1173, 1177 (6th Cir. 1996).

## ANALYSIS

The Union and Sekisui have moved for summary judgment. The Union contends that it is entitled to summary judgment because Sekisui has refused to comply with the clear mandate of an arbitrator authorized to interpret the labor agreement between the parties. Sekisui does not dispute the authority of the arbitrator or the validity of the award. Instead, Sekisui contends that it is entitled to summary judgment because it has complied with the arbitrator's award. Sekisui

5

also argues that any dispute over the interpretation of the arbitrator's award is for the arbitrator to decide; but, Sekisui contends that the Union waived any dispute with Sekisui's interpretation of the award by failing to bring the dispute to the arbitrator during his ninety-day continuing jurisdiction.[2]

### 1. The Court's Authority in this Dispute

When parties select arbitration to settle their disputes, district courts are not empowered to perform fact-finding or second guessing. *Armco Employees Independent Federation, Inc. v. Armco Steel Company*, 65 F.3d 492, 496 (6th Cir. 1995). The only role the district court has in such a situation is "to place government authority behind an award in order to enforce it." *Id*. The Supreme Court has held that an arbitrator's award is valid so long as it "draws its essence from the collective bargaining agreement." *United Paperworkers Int'l Union v. Misco, Inc.*, 484 U.S. 29, 36 (1987).

Here, the parties do not dispute the validity of the arbitrator's award. Instead, the dispute among the parties revolves around the interpretation and implementation of that award. "Traditionally, if an arbitration award is ambiguous and in need of clarification, courts are made to remand back to the arbitrator to clarify its meaning and intent." *Sterling China Co. v. Glass, Molders, Pottery, Plastics & Allied Workers*, 357 F.3d 546, 552 (6th Cir. 2004) (citing *M & C Corp. v. Erwin Behr Gmbh & Co.*, 326 F.3d 772, 782 (6th Cir. 2003)). The court's authority to

---

[2] Sekisui also contends that it is entitled to summary judgment because any dispute over the sufficiency of Sekisui's compliance would require the consideration of issues not presented to the Arbitrator or considered by the Arbitrator and thus requires a new grievance to be filed. In making this argument, Sekisui refers to the Union's complaints regarding employee privacy, the timing of reimbursements, and tax consequences of reimbursements. The Court finds Sekisui's argument to be groundless. These complaints relate to the Union's principal contention that Sekisui has not complied with the arbitrator's mandate to return the health plan to the *status quo ante.* They are not new grievances which must be submitted to the grievance procedure, but are instead perceived shortfalls of Sekisui's compliance with the arbitration award.

remand in such a situation derives from a recognized exception to the doctrine of *functus officio*, which provides that an arbitrator's duties are discharged upon the rendering of a final award, when the arbitral authority is terminated.  *Behr*, 326 F.3d at 782.

"The propriety of remanding an ambiguous award to the arbitrator is reinforced by the strong federal policy favoring arbitration."  *Id*.  Indeed, "[a] district court itself should not clarify an ambiguous arbitration award but should remand it to the [arbitrator] for clarification."  *Mutual Fire, Marine & Inland Ins. Co. v. Norad Reinsurance Co*., 868 F.2d 52, 58 (3d Cir. 1989).  *See also Tri–State Bus. Mach., Inc. v. Lanier Worldwide, Inc.,* 221 F.3d 1015, 1020 (7th Cir. 2000) (reversing and remanding order executing post-arbitration judgment where district court erred in not remanding the ambiguous award to arbitration panel for clarification); *Americas Insurance Co. v. Seagull Compania Naviera, S.A.,* 774 F.2d 64, 67 (2d Cir. 1985) ("An ambiguous award should be remanded to the arbitrators so that the court will know exactly what it is being asked to enforce."); *Ganey v. Raffone,* No. 90–00871, 1996 WL 382278, at *3 (6th Cir. July 5, 1996) ("There are limited circumstances under which a district court can remand a case to the arbitrators for clarification. While a remand is to be used sparingly, it may be employed to avoid judicial guessing of the meaning of arbitral awards.") (citations and quotations omitted).  Thus, "for a court to engage in guesswork as to the meaning and application of an ambiguous arbitration award is inconsistent not only with federal policy, but also with the parties' own agreement to submit their dispute to arbitration."  *Behr III*, 326 F.3d at 782.

2.  <u>**Whether the Arbitrator's Award in Ambiguous**</u>

The Sixth Circuit has recognized the need for an arbitrator's "clarification of an ambiguous award when the award fails to address a contingency that later arises or when the award is susceptible to more than one interpretation."  *Ameritech*, 200 F.3d at 977.  In

determining whether an arbitration award is ambiguous, the Court should read the award in conjunction with the arbitrator's opinion. *Pace Local Union 1967 v. Champion Intern. Corp.*, 8 Fed. Appx. 404, 407 (6th Cir. 2001). Despite a finding of ambiguity, the court should affirm the award if "the award is rationally inferable from the facts before the arbitrator." *Valentine Sugars, Inc. v. Donau Corp.*, 981 F.2d 201, 214 (5th Cir. 1993). However, the court may not interpret an ambiguous arbitration award unless the ambiguity can be resolved from the record. *Island Creek Coal Sales Co. v. City of Gainesville*, 764 F.2d 437, 440 (6th Cir. 1985). Accordingly, a court must examine the award to determine if it was ambiguous and if so, whether any ambiguities could be resolved from the record.

The Union and Sekisui have proffered two different interpretations of the arbitrator's award. After finding that Sekisui's failure to negotiate with the Union violated the terms of the CBA, the arbitrator provided as follows:

> As a remedy for the violation, the Company is ordered to restore the bargaining unit health care plan to the ***status quo ante*** which prevailed on May 28, 2009 when the Company agreed in writing to be bound by the terms and conditions of the collective bargaining agreement. ***Status quo ante*** applies not only to the terms and conditions of the health plan, but also to any shortfalls in coverage to individuals that might have occurred under the terms of the new plan, but which would have been covered under the health plan in effect at the time the Company agreed to be bound by the collective bargaining agreement.

DN 1-2 at p. 9.

The Union maintains that the arbitrator's award required Sekisui to reinstate the health insurance *plan* that was in effect on May 28, 2009, and not just restore the coverage of that plan.[3] In support of its position, the Union argues that the CBA interpreted by the arbitrator gives

---

[3] The Union states that "the *status quo ante* that existed prior to May 28, 2009 was that" the health insurance plan – not the Company's Human Resources department – provided specific medical and prescription drug coverage." DN 34 at p. 2.

bargaining unit employees the right to participate "in the plans negotiated between the parties" and not merely the right to the coverage of those plans.  Currently, BCBS covers certain medical expenses and Sekisui reimburses employees for certain medical expenses that are not covered under the BCBS Plan but would have been covered by the Celanese Plan.  To be reimbursed, bargaining unit employees must submit documentation of their expenses to the human resources department.  The reimbursements are treated as taxable income, unlike the expenses which were directly paid by a health insurance plan.[4]  Because none of these features were part of the *status quo ante* that existed prior to May 28, 2009, the Union argues that Sekisui has not restored the terms and conditions of the plan.

It is Sekisui's position that the award required it to provide health coverage to employees for everything covered by the Celanese Plan, and to at least the same extent.  In order to do so, Sekisui reimburses employees for medical expenses which would have been covered by the Celanese Plan, and grosses-up the reimbursements to account for tax consequences.  Thus, Sekisui argues that because the employees' out-of-pocket expenses are ultimately the same as they were with the Celanese Plan, it has complied with the award.  In support of its position, Sekisui points out that the arbitrator did not require that a single entity pay for the entire coverage.  Thus, Sekisui argues that the combination of coverage provided by it and BCBS constitutes compliance with the award.

The crux of the dispute between the parties boils down to the meaning of "terms and conditions" as used in the arbitrator's award.  The Court notes that the arbitrator did not order Sekisui to restore the plan that was in place prior May 28, 2009.  Instead, the arbitrator ordered

---

[4] Sekisui has "grossed-up" these reimbursements to account for any adverse tax consequences to the employees.  However, the Union maintains that the reimbursements could propel employees into a higher tax bracket.

Sekisui to restore the plan *to the status quo ante*. The arbitrator then provided his own two-part definition of *status quo ante*, encompassing both the restoration of the terms and conditions of the health plan and shortfalls in coverage that had occurred. Clearly, a literal return to the *status quo ante* is impossible as Sekisui cannot provide the Celanese Plan to the employees. Thus, the Court finds that the actual dispute revolves around what constitutes the "terms and conditions" of the health plan as used in the arbitrator's award. Accordingly, the issue facing this Court what the arbitrator intended by his mandate that Sekisui restore the terms and conditions of the health plan that existed prior to May 28, 2009.

The Union appears to argue that the phrase "terms and conditions" encompasses all aspects of the Celanese Plan. The Union's interpretation appears to hinge on evidence that it is possible for Sekisui to design and implement a plan that mirrors the Celanese Plan. This would require Sekisui to implement a self-insured plan and to have a TPA administer the plan.[5] The Union claims that it contacted an insurance brokerage firm which stated that it was possible to build a plan identical to the Celanese Plan. According to the Union, after Brandon Duncan gave Ila Frazier a telephone number to call about the possibility of building the plan, Ms. Frazier called Mr. Duncan back to tell him that it was too expensive. Duncan Deposition, DN 27-3 at p. 11. However, Sekisui maintains that when Ms. Frazier contacted the brokerage firm, it was informed that it would be impossible to both design a self-insured plan identical to the Celanese

---

[5] The Union maintains that it has never taken the position that only a self-insured plan will satisfy the arbitration award or that such a plan must be offered by Celanese rather than Sekisui. However, Sekisui cannot force a provider of group insurance to change its available coverages and adopt the terms and conditions of the Celanese Plan.

Plan and to find a TPA to administer the plan.[6] Indeed, the arbitrator acknowledged in his opinion that Sekisui could not be forced to do the impossible. DN 1-2 at p. 7. Thus, it appears that by "terms and conditions" the arbitrator envisioned something less than reinstatement of a plan that is an exactly mirrors the Celanese Plan.

Sekisui interprets the "terms and conditions" of the health plan as tantamount to the "coverage" of the health plan, as the arbitrator's award did not draw a distinction between the two. Sekisui contends that the award involved both prospective relief (restoring the plan's coverage from the date of the award) and retrospective relief (reimbursing employees for any shortfalls in coverage that occurred before the award). In support of its interpretation, Sekisui points out that the arbitrator did not discuss any additional features of the plan outside of employee coverage and cost. The Court acknowledges that the testimony during the Arbitration focused on the coverage of the insurance plans and the costs to employees. DN 22-2. However, a review of the arbitrator's opinion clearly shows that the arbitrator did not make any content comparisons between the two plans and considered such a review to be inappropriate in determining whether Sekisui violated the CBA by failing to negotiate a new insurance plan. DN 1-2 at p. 7. For this reason, the Court cannot conclude that the arbitrator intended that "terms and conditions" include only coverage and costs to employee.

The Court finds that the arbitrator's award is ambiguous. Although it is possible that "terms and conditions" may encompass something more than coverage and the ultimate out-of-pocket expense to the employees, the Court cannot conclude that the award mandates reinstatement of a plan that exactly mirrors the Celanese Plan. The arbitrator was aware that

---

[6] Ms. Frazier, in her affidavit, states that the broker told her that no one would provide a quote, at any price, for such a small group of employees. Ms. Frazier further states that this is what she told Mr. Duncan. DN 35-1 at p. 1.

doing so was impossible. Additionally, Sekisui cannot force Blue Cross/Blue Shield or any other provider to provide coverage not available under a group insurance plan. In light of these circumstances, Sekisui reasonably believed that the creation of a "piece-meal" plan consisting of the BCBS group insurance plan and its own reimbursements for coverage shortfalls complied with the arbitration award. On the other hand, the Court cannot conclude that the award was unambiguous in mandating the restoration of only the coverage provided and the cost to the employees under the Celanese Plan. There is nothing in the arbitrator's award or opinion to indicate that the "terms and conditions" were so limited. Accordingly, the Court finds that the arbitration award was ambiguous as it relates to the meaning and extent of "terms and conditions." The Court further finds that the ambiguity cannot be resolved from the record.

### 3. Whether Union Waived Dispute Over Interpretation of Award

Sekisui argues that Union waived its interpretation of the award in favor of Sekisui's by failing to bring the matter before the arbitrator during his 90-day period of continuing jurisdiction. In support of this argument, Sekisui cites a Ninth Circuit case, *Teamsters Local Union No. 760 v. United Parcel Services, Inc.*, 921 F.2d 218 (9th Cir. 1990). In that case, an arbitrator determined that UPS discharged an employee in violation of the collective bargaining agreement and ordered UPS to reinstate the employee with full back pay and benefits. *Id*. at 218. The arbitrator retained jurisdiction over the matter for 60 days to resolve computational issues. *Id*. Teamsters believed that UPS failed to comply with the back pay award because UPS did not compensate the employee for overtime that the employee would have earned if he had not been discharged. *Id*. at 218-19. The parties then submitted two issues back to the arbitrator: (1) did the union waive objections to the company's back pay computation by not raising the issue within the 60-day period; and (2) if not, does the award require inclusion of overtime in the

computation of back pay? *Id*. at 219.  The arbitrator determined that the union waived its right to have the arbitrator clarify the award in accordance with his retained jurisdiction. *Id*.  Teamsters then brought suit under 29 U.S.C. § 185 to enforce the arbitrator's original decision. *Id*.  Teamsters argued that it did not seek to re-litigate whether the arbitrator could properly consider the union's back pay argument after the arbitrator's retained jurisdiction had expired, but argued that it had an independent statutory right to enforce the substantive terms of the arbitrator's original decision.[7]  Finding that this argument was frivolous and legally unreasonable, the district court granted UPS's motion to dismiss and awarded sanctions for costs and attorneys' fees. *Id*.  Teamsters appealed only the district court's decision to award sanctions. *Id*.  On appeal, the court of appeals held that the district court did not abuse its discretion in finding the union's cause of action frivolous. *Id*. at 220.  In so holding, the court noted that "[t]he union had no right to relitigate the arbitrator's decision in federal court." *Id*.

This case does not provide direct support for Sekisui's argument because the parties did not submit to arbitration the issue of whether the Union waived its objections to Sekisui's interpretation of the award by failing to bring the issue to the arbitrator within the 90-day period of retained jurisdiction.  In *United Parcel Services*, the arbitrator already determined that the union waived its objections.  Here, the arbitrator has not already determined that the Union waived its interpretation of the award and the Court declines to make such a determination.  Accordingly, remand to the arbitrator is appropriate.

## CONCLUSION

Having found that the Court cannot enforce the arbitration award because it is ambiguous, the Court HEREBY ORDERS AS FOLLOWS:

---

[7] Teamsters hoped that the district court would remand the matter to the arbitrator for clarification of its original award.

13

(1) This matter is REMANDED to the arbitrator for clarification of his award. Upon remand, the arbitrator is directed to clarify his mandate that Sekisui restore the terms and conditions of the health plan.

(2) The parties' cross motions for summary judgment (DN 21 and DN 27) are DENIED. The parties may renew their motions for summary judgment at any time within thirty (30) days after the arbitrator issues his decision.

(3) Within five (5) days after the issuance of this Order, Plaintiffs shall provide the Court with the mailing address of arbitrator Richard Humphreys. Upon receipt of the address, the Clerk of Court is directed to send a copy of this order to Richard Humphreys.

(4) Plaintiff shall notify the Court within five (5) days after the arbitrator issues his decision.

(5) Enforcement of the arbitrator's award is STAYED pending remand to the arbitrator for clarification of his award.